1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7    UNITED STATES OF AMERICA,                 Case No.  20-cr-00242-JSW-1
8                        Plaintiff,
9              v.                              **ORDER ON EXCUSING
                                               UNVACCINATED JURORS**
10   CHASE RONYAE MCMILLON,
11                       Defendant.
12

United States District Court
Northern District of California

13          On March 17, 2022, the Court issued a brief order stating that: it would excuse jurors who

14   were not "fully vaccinated" for COVID-19, *i.e.,* jurors who had not received their primary series

15   of vaccines; and was inclined to exclude jurors who declined to state their vaccination status

16   during voir dire.  (*See* Dkt. No. 199.)  The Court also stated it would issue a more detailed Order

17   setting forth its reasoning.  This is that Order.

18                                     **BACKGROUND**

19          At the pretrial conference in this matter, the Court advised the parties that it was inclined to

20   follow the United States Court of Appeals for the Ninth Circuit's protocols for oral argument in

21   terms of vaccination status, which would exclude jurors who had received their primary series *and*

22   a booster of the COVID-19 vaccine.  The parties filed objections to that proposal.  (Dkt. Nos. 175,

23   176.)  Defendant objected on the basis that excluding such jurors might violate his right to a jury

24   drawn from a fair cross-section of the community and on the basis that the Court's proposal

25   substantially deviated from the Northern District's Jury Selection Plan.  The Government also

26   noted these concerns and asked the Court to make an individualized assessment before excluding

27   jurors based on their vaccination status.  Upon further consideration, the Court determined it

28   would only exclude jurors who were not "fully vaccinated" or who declined to provide their

United States District Court
Northern District of California

1    vaccination status and would include individuals who were fully vaccinated but not "up to date."[1]

2    The venire originally consisted of 79 individuals.  Two individuals requested a

3    postponement and one juror had previously served, and those individuals were excused.

4    Accordingly, to the extent the parties objected to the Court's proposal based on the exclusion of

5    individuals who had not received a booster, those objections are moot.  Of the 76 individuals

6    remaining in the venire, three individuals either were not vaccinated or were not fully vaccinated,

7    eight individuals declined to provide their vaccination status, and some individuals did not submit

8    questionnaires before they reported, so their vaccination status was unknown.

9    On March 17, 2022, the parties submitted to the Court a list of twelve jurors they agreed

10   should be excused for cause or hardship.  Following that submission, the remaining venire

11   included two jurors who either were not fully vaccinated or were not vaccinated.  The Court then

12   issued the brief order excusing those jurors.  (Dkt. No. 199.)  On March 18, 2022, only 46

13   members of the venire reported for service.  Any juror who had not submitted a questionnaire on-

14   line completed the questionnaire prior to voir dire.  All of those individuals were either fully

15   vaccinated or fully vaccinated and up to date.

16   The Court conducted a further inquiry into the vaccination status of jurors who declined to

17   provide their status.  Only one of those individuals was not vaccinated, and the Court excused her.

18   After excusing jurors for cause and hardship, 25 individuals remained, and the Court summoned

19   an additional 30 jurors to report on Monday, March 21, 2022.  Of those individuals who submitted

20   a questionnaire online, two were not fully vaccinated and were excused prior to reporting.  The

21   parties also agreed to exclude six other individuals for cause or hardship.[2]

22

23   [1]   The Court uses the term "fully vaccinated" for jurors who "have received all recommended
     doses in their primary series of COVID-19 vaccine," *i.e.,* one dose of the Johnson & Johnson

24   vaccine or both doses of the mRNA vaccines.  The Court uses the term "up to date" for jurors
     "have received all recommended doses in their primary series COVID-19 vaccine, and a booster

25   does when eligible."  *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-
     date.html (last visited Mar. 23, 2022).  In the end, the Court did not exclude any individuals who

26   declined to provide their vaccination status over any party's objection.  The parties agreed to
     exclude three jurors who declined to provide their status, and those jurors were excused prior to

27   reporting.

28   [2]   That list included the only two individuals who submitted a questionnaire on-line and who
     declined to provide their vaccination status.

2

United States District Court
Northern District of California

1    On Monday March 21, 2022, 16 of the 22 prospective jurors due to report for service

2 appeared.[3]  All of those individuals were either fully vaccinated or fully vaccinated and up to date.

3 The Court completed voir dire, entertained the parties' objections for cause and hardship, and took

4 the parties' peremptory challenges to the remaining jurors.

5    In total, the Court excluded five jurors on the basis that they were not fully vaccinated,

6 three women and two men.  Based on information contained in their questionnaires, one of the

7 women was born in Mexico, one was born in Ukraine, and one of the men was born in Lebanon,

8 the remaining two individuals were born in the United States, and the Court cannot speak to their

9 ethnic or racial background.[4]

10                                       **ANALYSIS**

11    The United States Constitution guarantees a defendant "the right to a speedy and public

12 trial, by an impartial jury of the State and district wherein the crime shall have been committed."

13 U.S. Const. amend. VI.  That right has been codified in the Jury Selection and Service Act, 28

14 U.S.C. sections 1861, *et seq.*, which provides for juries "selected at random from a fair cross

15 section of the community in the district or division wherein the court convenes."  28 U.S.C. §

16 1861; *see also Taylor v. Louisiana*, 419 U.S. 522, 527, 538 (1975) ("[T]he American concept of

17 the jury trial contemplates a jury drawn from a fair cross section of the community," but "we

18 impose no requirement that petit juries actually chosen must mirror the community and reflect the

19 various distinctive groups in the population").  The Court also considers the rights of the

20 prospective jurors to serve because "all citizens shall have the opportunity to be considered for

21 service on grand and petit juries in the district courts of the United States[.]"  28 U.S.C. § 1861.

22    In order to show a violation of the "fair cross-section" requirement, the party objecting

23 must make the *prima facie* showing set forth in *Duren v. Missouri*: "(1) that the group alleged to

24 be excluded is a 'distinctive' group in the community; (2) that the representation of this group in

25

26 [3]    One individual from the group of 25 who remained from Friday, March 18, 2022 did not
appear.  When she was contacted, she advised the Court that she had developed COVID-19 like
27 symptoms over the weekend.

28 [4]    This does not include the juror whom the parties agreed could be excused on other
grounds.

1  venires from which juries are selected is not fair and reasonable in relation to the number of such

2  persons in the community; and (3) that this underrepresentation is due to systematic exclusion of

3  the group in the jury-selection process."  439 U.S. 357, 364 (1979); *see also United States v. Elias*,

4  No. 18-cr-33 (S-2) (NGG), 2022 WL 125721, at *3 (E.D.N.Y. Jan. 13, 2022); *United States v.*

5  *Moses*, 19-cr-06074-EAW, -- F. Supp. 3d --, 2021 WL 4739789 (W.D.N.Y. 10/12/21) (defendant

6  waived fair cross-section requirement but government objected –overruling government's

7  objections).  If that party is able to make a *prima facie* showing, the burden would shift to the

8  opposing party to show "attainment of a fair cross-section [would] be incompatible with a

9  significant state interest."  *Duren*, 439 U.S. at 368.

10      The Court concludes that jurors who are not fully vaccinated do not constitute a

11  "distinctive group."  Although the Supreme Court has not defined that term, it generally has

12  limited the definition to groups based on gender, race, or some other "immutable characteristic."

13  *See, e.g., Lockhart v. McCree*, 476 U.S. 162, 174-75 (1986).  In *Lockhart,* the Court also clarified

14  that

15      the concept of "distinctiveness" must be linked to the purposes of
        the fair-cross-section requirement … (1) guarding against the
16      exercise of arbitrary power and ensuring that the commonsense
        judgment of the community will act as a hedge against the
17      overzealous or mistaken prosecutor, (2) preserving public
        confidence in the fairness of the criminal justice system, and (3)
18      implementing our belief that sharing in the administration of justice
        is a phase of civic responsibility.
19

20  *Id.* (quoting *Taylor*, 419 U.S. at 530-531) (internal quotations and alterations omitted).

21      Several courts faced with this issue have found that jurors who are not fully vaccinated do

22  not qualify as a distinctive group.  *See, e.g., United States v. Elder,* No. 18-cr-92, 2022 WL

23  836923, at *11 (E.D.N.Y. Mar. 21, 2022) (denying motion for new trial); *In re Nat'l Prescription*

24  *Opioid Litig.,* MDL No. 2804, 2022 WL 668434, at *7-*8 & n.9 (N.D. Ohio Mar. 7, 2022) (citing

25  cases); *United States v. O'Lear*, No. 19-cr-00349, 2022 WL 419947, at *2 (N.D. Ohio Feb. 11,

26  2022) (citing cases); *Elias*, 2022 WL 125721, at *4; *Moses*, 2021 WL 4739789, at *3-*4.

27      Unlike race or ethnicity, an individual's vaccination status is a matter within their control

28  rather than an immutable characteristic.  *See, e.g., Elias*, 2022 WL 125721, at *4; *Moses,* 2021

4

WL 4739789, at *4; *cf. O'Lear,* 2022 WL 419947, at *2.  In addition, an individual's reasons for choosing to remain unvaccinated may vary.  *See, e.g., Elder,* 2022 WL 836923, at *11.  Further, a group that is "defined solely in terms of shared attitudes that would prevent or substantially impair members of the group from performing one of their duties as jurors," generally will not satisfy the first prong of the *Duren* test.  *Lockhart,* 476 U.S. at 174.  The *Elias* and *Moses* courts also concluded that excluding unvaccinated jurors would not substantially impair the rights of those individuals because it would preclude them from serving on other criminal juries.  *Elias*, 2022 WL 125721, at *4; *Moses*, 2021 WL 4739789, at *4.

The Court finds the reasoning of each of the cited cases above persuasive, and it concludes that individuals who are not fully vaccinated against COVID-19 do not constitute a "distinctive group."  The Court also concludes the evidence presented by Defendant does not suggest that an individual's vaccination status would be "a proxy for a characteristic of a distinctive group, like race, gender, or ethnicity, such that exclusion of unvaccinated jurors would be a proxy for excluding a distinctive class."  *Elias*, 2022 WL 125721, at *5.  In *Elias*, for example, the defendant presented statistics that demonstrated 53% of the Black population and 66% of the Latinx population in New York City were fully vaccinated.  The court determined the defendant had not demonstrated those groups would be disproportionately underrepresented if it excluded unvaccinated individuals.  *Id.*  Here, Defendant has put forth statistics that show the members of the Black community who are fully vaccinated have a 50.8% to 74.8% vaccination rate in the counties that make up much of the Court's pool of prospective jurors.  He also put forth statistics that members of the Latinx community who are fully vaccinated in those counties have a 64.9% to 91.8% vaccination rate.  (*See* Dkt. No. 176-1, Declaration of Counsel, ¶¶ 2-6.)  The Court concludes that showing is not sufficient to demonstrate those groups would be disproportionately underrepresented by excluding individuals who are not fully vaccinated.

Finally, in terms of vaccination status serving as a proxy for exclusion of a distinctive group, the Court also concludes Defendant has not shown it would "exclude individuals based along historically disenfranchised lines,"; nor does the date presented suggest "they would be disproportionately underrepresented in violation of the second element of the *Duren* test."  *Elias*,

2022 WL 125721, at *5; *see also Duren*, 439 U.S. at 364.  Moreover, the Court cannot conclude that any underrepresentation is due to the selection process itself.  *See, e.g., Elias,* 2022 WL 125721, at *5 (citing the pandemic and impacts on in-person proceedings as an "external" force).

Even if, however, Defendant was able to make a *prima facie* showing under *Duren*, the Court concludes there are significant state interests that would be incompatible with including such jurors.  *See Duren*, 439 U.S. at 368.  This trial is not expected to be as lengthy as, for example, the trial of Elizabeth Holmes, but it is expected to last at least two weeks.  The Court is able to use a separate courtroom as jury room, and it also acknowledges that rates of COVID-19 infections in Alameda County and surrounding counties have begun to decline.  However, the virus still is present.  Indeed, the Court, with agreement of the parties, excused one of the jurors on the first day of testimony because she advised the Court and the parties, she learned she had been in close contact, the previous evening, with someone who tested positive for COVID-19.  For that reason, the Court concludes the exclusion of unvaccinated jurors is warranted on the basis that their service "would be likely to disrupt the proceedings."  *See* 28 U.S.C. § 1866(c); *see also Elias*, 2022 WL 125721, at *6.

**IT IS SO ORDERED**.

Dated: March 23, 2022

_____
JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California

6